UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DIEUDONNE ABEL,

        Plaintiff,

    -against-

TOWN SPORTS INTERNATIONAL
HOLDINGS, INC., TOWN SPORTS
INTERNATIONAL, LLC,

        Defendant.

09 CIV. 10388 (DLC)

MEMORANDUM OF LAW IN OPPOSITION TO
MOTION TO ENFORCE SETTLEMENT AGREEMENT

OGIHARA & ASSOCIATES, PLLC
Matthew Presseau (MP 6558)
presseau@ogiharalaw.com
122 East 42nd Street, Suite 2515
New York, New York 10168
t     (212) 661-1010
f     (212) 661-6116

Attorneys for Plaintiff
Dieudonne Abel

Preliminary Statement

Plaintiff, Dieudonne Abel, respectfully submits this memorandum of law in opposition to the motion of Defendants, Town Sports International Holdings, Inc., and Town Sports International, LLC, to enforce a purported settlement agreement between Plaintiff and Defendants.   Reference is made to the Affirmation of Matthew Presseau dated December 10, 2010, and the Affidavit of Dieudonne Abel dated December 10, 2010, both submitted herewith, and all other papers heretofore filed with the Court in connection with this action.   References to Exhibits in this memorandum refer to Exhibits annexed to the Affirmation of Matthew Presseau unless otherwise indicated.

Though the parties reached a preliminary understanding of acceptable settlement terms on October 5, 2010, it was understood that any final agreement would have to be reduced to writing and duly executed by the parties to have effect.   Defendants' draft agreement explicitly states that it "will not be effective or enforceable until Plaintiff has delivered a signed, notarized copy of this Agreement to the attorneys for [Defendants]". Moreover, the statements and conduct of the parties in the period following October 5, 2010, clearly evince an understanding that negotiations would necessarily continue until an agreement in writing could be finalized.   At no time was a contract for the settlement of this action formed between the parties.  As such, there is no settlement agreement to enforce.

Defendants further request that upon the restoration of this matter to the Court's calendar, certain conditions should be imposed with regard to the pretrial schedule.   Plaintiff acknowledges that outstanding pretrial procedures must be expedited and does not oppose imposition of a strict yet reasonable schedule by the Court.  However, Defendants' request that the discovery deadline, which passed on November 24, 2010, the date their present motion was

served and filed, and their request that the Plaintiff be ordered to appear for deposition forthwith are incompatible. Fact discovery is complete or it is not. Moreover, though Defendants complain about hardship because of delay in the completion of discovery, their request should be considered in light of the fact that they bear responsibility for delays in discovery and that the scheduling of the Plaintiff's deposition and the October 4, 2010, settlement conference were set on their initiative. In the least, depositions of the Plaintiff, Plaintiff's witnesses, and Defendants' witnesses must be completed in this case. Fact discovery and subsequent deadlines ought to be reasonably extended to accommodate procedures that remain outstanding.

As for Defendants' request for an award of attorney's fees and costs, it is without cause or merit and the Court should deny it.

<u>Background</u>

The Summons and Complaint in this action was filed on December 22, 2009, alleging that the Defendants discriminated against Plaintiff in connection with his employment by them on the basis of race, skin color and national origin under Federal, New York State and New York City law, as well as alleging a tort of defamation under New York State law. Discussions to settle the action commenced relatively early on in the litigation. However, these were informal in nature and limited to general inquiries about the respective parties' inclination to settle and "ball park" generalities. (Presseau ¶3).

On March 9, 2010, the Court filed the Pretrial Scheduling Order setting a deadline for all fact discovery to be completed by September 24, 2010. The parties thereafter commenced exchange of discovery demands and responses that continued in an amicable and cooperative manner through August 2010. (Presseau ¶4). On or about August 6, 2006, Plaintiff's counsel served Plaintiff's Responses to Defendants' First Set of Interrogatories and Plaintiff's Responses to

Defendant's First Request for the Production of Documents. In the cover letter, Plaintiff's counsel referred to the need for the parties to enter a confidentiality agreement covering confidential information and documents produced through discovery. The letter also included Plaintiff's first formal settlement proposal to Defendants. Though the demand exceeded the Defendants limits conveyed to Plaintiff by Defendants' counsel, it was made in good faith to formally initiate negotiations. (Presseau ¶5; *see* Exhibit A). Over the course of the next couple of weeks, counsel for Plaintiff and Defendants discussed the confidentiality agreement as well as Plaintiff's general settlement position. The latter discussions were limited in nature because of the difference in the parties' respective positions. (Presseau ¶6).

On or about August 17, 2010, the parties, through their respective counsel, finalized the confidentiality agreement. At that time, Defendants' counsel brought to the attention of Plaintiff's counsel the fact that the Pretrial Scheduling Order had instructed the parties to contact Magistrate Judge Freeman prior to July 16, 2010, to pursue settlement discussions. Though Plaintiff's counsel expressed reservations about the likelihood of discussion being fruitful to Defendants' counsel, counsel for the parties subsequently spoke by telephone that afternoon and called Magistrate Judge Freeman with whom they scheduled a telephone conference for August 23, 2010. (Presseau ¶7).

On August 23, 2010, the telephone conference with Magistrate Judge Freeman was conducted, but made little progress was made toward settlement during the call. At Magistrate Judge Freeman's suggestion, however, Plaintiff's counsel agreed to provide Defendants with an outline of Plaintiff's damages to further discussions and the parties scheduled another telephone conference for September 3, 2010. After the conference call, counsel for the parties stayed on the line and discussed the likelihood that fact discovery could not be completed by September

24, 2010.  Defendants' counsel proposed that a request for an extension be made to the Court, to which Plaintiff's counsel consented.  (Presseau ¶8)

On August 24, 2010, Defendants' counsel sent a letter to the Court requesting an extension of the pretrial deadlines.  The letter explained that although Plaintiff served on Defendants its First Notice to Produce Documents dated April 16, 2010, Defendants were unable to respond until early August because of their difficulty accessing and locating responsive documents.  The delay affected the scheduling of depositions and related matters, and although Plaintiff's deposition had been scheduled for September 16, 2010, it was unlikely that Defendants' and third party depositions could be completed by the September 24, 2010, the fact discovery deadline.  Accordingly, an extended schedule was proposed.  In relevant part, the letter requested that the deadline for fact discovery be extended to November 24, 2010.  The Court granted the extension by endorsing the letter on August 26, 2010.  (Presseau ¶9; *see* Exhibit B).

On September 2, 2010, counsel for the parties exchanged emails regarding Plaintiff's damages calculation, but the difference in positions remained too great and appeared ended at an impasse.  The telephone conference with Magistrate Judge Freeman on September 3, 2010, proceeded as scheduled but yielded little progress.  However, after the conference, counsel for the parties continued to discuss settlement and concluded that the door ought not be closed just yet.  On September 9, 2010, counsel for the parties conferred and agreed that although the parties' respective positions remained far apart, discussions with Magistrate Judge Freeman in the presence of the parties could be fruitful.  Defendants' counsel contacted Magistrate Judge Freeman and scheduled a conference at the courthouse for September 27, 2010.  (Presseau ¶10).

Several days before Plaintiff's deposition was to occur on September 16, 2010, Defendants' counsel contacted Plaintiff's counsel about rescheduling Plaintiff's deposition.  On

September 16, 2010, the parties agreed to reschedule Plaintiff's deposition to October 6, 2010. Later that day, Defendant's counsel informed Plaintiff's counsel that due to scheduling conflicts the September 27, 2010, needed to be rescheduled. Plaintiff's counsel expressed flexibility and apparently after contacting Magistrate Judge Freeman, Defendants' counsel informed Plaintiff's counsel later that day that the conference was rescheduled for October 4, 2010. (Presseau ¶11).

On October 4, 2010, the parties along with their counsel appeared for a settlement conference with Magistrate Judge Freeman. After about four hours of discussion, the parties seemed to be close to a settlement with a proposed payment of $75,000.00 to the Plaintiff in exchange for mutual releases and a confidentiality agreement. After caucusing with Magistrate Judge Freeman separately, she convened the parties and their counsel in the courtroom to discuss the promising settlement offer. At that time, Plaintiff's counsel requested that the offer remain open for twenty-four hours so that it could be discussed with Plaintiff. Defendants agreed to do so. In the informal discussion that ensued, Plaintiff's counsel expressed that in the event of Plaintiff's acceptance, a writing finalizing the agreement and likely including further terms would have to be worked out. Although Magistrate Judge Freeman briefly mentioned that the offer could be put on the record, neither side expressed interest. (Presseau ¶12).

On October 5, 2010, counsel for the parties spoke by telephone and Plaintiff's counsel communicated that Plaintiff would accept the offer, though it was implicit in the balance of the discussion that a written agreement would be required to finalize the settlement. Counsel for the parties specifically discussed the structure of payments that would be incorporated into the agreement as well as the likelihood that the fine details and other terms that are often included in a settlement agreement would need to be worked out. It was agreed that Defendants' counsel should draft the agreement and then forward it to Plaintiff's cousel for review and comment.

Clearly, counsel contemplated that there would be the customary back and forth until a draft could be finalized. Following the telephone conversation, Defendants' counsel sent Plaintiff's counsel an email confirming that the Court could be apprised. It read, "I assume you are okay with our informing Judge Freeman that we have reached an *agreement in principle* as she requested we do yesterday?" (*Emphasis added*). (Presseau ¶13; *see* Exhibit C). Defendants' counsel reported to the Court that a settlement had been reached in the case and on October 9, 2010, the Court filed an Order of Discontinuance dated October 8, 2010. (Presseau ¶14; *see* Exhibit D; *see also* Strianese ¶10).

As Plaintiff and his counsel awaited the draft agreement, they continued to discuss the proposed settlement and Plaintiff continued to request further terms be incorporated into a final agreement. On or about October 12, 2010, Plaintiff instructed his counsel to request that the agreement identify the settlement payment as compensation for physical sickness damages related to his defamation claim. He also instructed his counsel to request that Defendants reconsider the conduct of the employees who he complained had harassed and/or discriminated against him. Plaintiff's counsel conveyed Plaintiff's requests to Defendant's counsel by telephone and forwarded information supporting the request to identify payments as physical sickness damages by email upon assurance that Defendants' counsel would forward it to his firm's tax attorneys for consideration. On or about October 20, 2010, Plaintiff instructed his counsel to request that the employment records pertaining to Plaintiff maintained by Defendants be "cleared" of any negative notation. (Presseau ¶15; Abel ¶3; *see* Exhibit E).

By email dated October 20, 2010, Defendants' counsel denied the Plaintiff's requests. However, Defendants' counsel offered to include a term in the agreement that Defendants would provide neutral employment references. Furthermore, although it could not be included as a term

of the agreement nor any action promised, Defendants' counsel stated that Plaintiff's request that

his former colleague's conduct be reviewed had been passed on to Defendants' "HR and Legal".

(Presseau ¶16; *see* Exhibit F).

On October 22, 2010, Plaintiff's counsel received a draft "Agreement and Release" (the

'Draft') from Defendants' Counsel.  Plaintiff's counsel reviewed the Draft that afternoon and noted

several issues.  First, was Defendants' failure to be tactful.  This case, like many discrimination

cases, is emotionally charged on both sides.  This is a matter that has been remarked upon at

times by counsel for both parties, by Magistrate Judge Freeman, and this Court.  (Presseau ¶17;

Abel ¶4).  The fourth "Whereas" clause of the preamble included a troubling phrase that reads:

> 'WHEREAS, based upon the release and other covenants set forth herein, TSI is willing to
>
> pay to Plaintiff the consideration provided herein *which is substantially greater than any*
>
> *amount that Plaintiff otherwise would have been entitled to receive from TSI* in
>
> consideration of receiving from Plaintiff the benefits contained in this Agreement."
>
> *(Emphasis added; see* Exhibit G).

The preamble to a contract generally holds no substantive weight but is generally

intended to merely establish the context of the terms that follow it.  The phrase emphasized

above is speculative, unnecessary and antagonistic.   By stating that the consideration is

'substantially greater than any amount that Plaintiff otherwise would have been entitled to receive

from TSI', it purports to preclude any possibility that Plaintiff might have otherwise prevailed at

trial and been entitled to more.  It is a self-serving statement that serves no discernible purpose

except to rhetorically belittle Plaintiff's claims and imply that Defendants are without fault and

that what follows is ultimately the settlement of a nuisance claim.  In fairness, it may in fact be

an accurate assessment of Plaintiff's case.  However, in the context of a settlement discussion the

insertion of legally meaningless and potentially inflammatory rhetoric in a draft agreement may not be wise. Defendants' counsel should have exercised restraint in light of the emotionally charged nature of the case and refrained from letting that figurative thumb slip into the Plaintiff's eye as the parties sought to finalize settlement. It is even more unfortunate since removal of the emphasized phrase would not have affected the substantive meaning of the Draft in the slightest, and in fact paragraphs 15 and 19 emphasize the purported neutrality of the contemplated settlement. (*See* Exhibit G).

Substantively, the Draft contained new terms in paragraphs 8, 10, 12, 13, 18 and 19 that would require further review with Plaintiff. Moreover, terms previously discussed were elaborated with new details that would have to be scrutinized. (Presseau ¶17).

Of particular relevance to this motion, provisions of the Draft expressed the clear intent of the Defendants that no contract to settle this action formed until a written agreement had been executed by the parties. Reference to the necessity of an agreement to be in writing are made in paragraphs 2 ('...Plaintiff is not relying on any such representation in deciding to execute this agreement'), 5 ('Plaintiff agrees not to commence, maintain, prosecute or participate as a party in any action or proceeding in any court or arbitration forum against the Released Parties with respect to any act, omission, transaction or occurrence up to and including the date of the execution of this Agreement.'), 6 ('Plaintiff agrees that Plaintiff, through counsel, will execute and deliver to TSI's counsel, contemporaneous with the signing of this Agreement...'), 9 ('Plaintiff agrees that... (iv) the representations, understandings and agreements set forth in this Agreement have been relied upon by TSI and constitute consideration for its execution of this Agreement.) 14 ('This Agreement may not be changed orally; it may only be changed by a writing.'), 21 ("This Agreement may be executed and delivered in two or more counterparts, each of which when so

executed and delivered shall be an original.'"), and 23 (By his signature below, Plaintiff agrees that he understands all of the terms of this Agreement, and agrees that such terms are fair, reasonable and are not the result of any fraud, duress, coercion, pressure or undue influence exercised by or on behalf of any of the Released Parties; and has agreed to and entered into this Agreement and all of its terms, knowingly, freely and voluntarily.'").  However, the strongest statement of the writing requirement is found in paragraph 22:

"22. Plaintiff agrees and acknowledges that:

"(a)     He: (i) has been advised by TSI to consult with an attorney before executing this Agreement concerning the meaning and significance of the terms of this Agreement and has consulted with Ogihara & Associates, PLLC; and (ii) has had an adequate opportunity to review this Agreement and all of its terms and to consider whether to sign this Agreement; and

"(b)     Upon execution of this Agreement by Plaintiff and TSI as provided in subparagraph (c) below, the Agreement becomes final and binding, in its entirety (the "Effective Date').

"(c)     Notwithstanding anything to the contrary contained herein, *this Agreement will not be effective or enforceable, and the payments provided for in paragraph 1 are not required and shall not be delivered or paid, until Plaintiff has delivered a signed, notarized copy of this Agreement to the attorneys for TSI*, Bryan Cave LLP, attn. Christopher R. Strianese, 1290 Avenue of the Americas, New York, New York 10104, *and the Agreement has been executed by TSI*."

(*Emphasis added.*)

The Draft was forwarded to Plaintiff for his review and then reviewed it at length with his counsel.  (Presseau ¶¶17, 18; Abel ¶6).  On October 26, 2010, Plaintiff's counsel inquired with Defendants' counsel whether the payments under the agreement could be paid partly in 2010 and partly in 2011 and he confirmed on October 28, 2010, that such a schedule would be acceptable to Defendants.  (Presseau ¶19).

As the expiration of the thirty-day period to restore the action to the calendar set forth in the Order of Discontinuance approached, Plaintiff's counsel consulted with Defendants' counsel about requesting an extension explaining that Plaintiff continued to discuss the settlement with his accountant and his counsel.  After a brief discussion the issue was tabled and counsel for the parties agreed that it could be revisited it in a few days if it still seemed necessary.  Defendants' counsel was reportedly on trial during the first week of November but the parties counsel spoke on November 5, 2010.  Plaintiff's counsel sought Defendants' consent to request an extension of the period to restore the action to the calendar because Plaintiff continued to review the Draft.  In light of the circumstances, he agreed.  Plaintiff's counsel made the request in writing to the Court on November 5, 2010, and the Court endorsed the letter extending the time to restore the matter to the Court's calendar to December 10, 2010.  (Presseau ¶20; *see* Exhibit H).

Over the weekend of November 6 and 7, and then continuing until November 10, 2010, Plaintiff's counsel discussed the Draft with Plaintiff extensively.  On November 10, 2010, Plaintiff's counsel notified Defendants' counsel by telephone that Plaintiff had carefully considered the Draft but that he could not settle the case on the proposed terms and conditions set forth in the Draft.  Instead, Plaintiff's counsel explained that Plaintiff wanted to "have his day in court."  Counsel for the parties discussed the reasons for Plaintiff's decision including some

terms and conditions Plaintiff objected to and that he was generally believed he was not getting the deal he wanted.

ARGUMENT

A. There is no settlement agreement to enforce.

Although Defendants insist that an oral agreement to settle this action had been formed on October 5, 2010, no agreement had in fact been formed. "[I]t is the intent of the parties that will determine the time of contract formation." Winston v. Mediafare Entertainment Corp., 777 F.2d 78, 80 (2nd Cir. 1985). While Plaintiff accepted Defendants' offer of settlement in principle on October 5, 2010, it was clearly understood between the parties that a duly executed contract in writing would be necessary to form a settlement agreement. This is apparent in the course of conduct between the counsel for the parties including correspondence, conversations and the Draft drafted by the Defendants.

The Second Circuit has enunciated a four factor test that courts should apply to determine whether parties intended to be bound to the terms of an agreement in the absence of a written document executed by both sides. "The court is to consider (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing. Ibid at 80. Ciaramella v. Reader's Digest Association, Inc., 131 F.3d 320, 323-6 (2nd Cir. 1997). "No single factor is decisive, but each provides significant guidance." Ciaramella, 31 F.3d at 323.

*Express Reservation*

The parties expressed the intention not to be bound until an agreement was reduced to writing and duly executed on numerous occasions.  Courts should give these statements considerable weight to avoid the clearly expressed intentions of the parties.  Ciaramella, 31 F.3d at 324.

Paragraph 22(c) of the Draft drafted by Defendants and forwarded to Plaintiff's counsel on October 22, 2010, clearly states, "Notwithstanding anything to the contrary contained herein, this Agreement will not be effective or enforceable, and payments provided for in paragraph 1 are not required and shall not be delivered or paid, until Plaintiff has delivered a signed, notarized copy of this Agreement to the attorneys for TSI... and the Agreement has been executed by TSI." Paragraph 14 states, "This Agreement may not be changed orally; it may only be changed by a writing." The Draft contains numerous other references to the execution of the agreement including paragraphs 2, 5, 6, 9, 21 and 23.

Moreover, counsel for the parties discussed the need to work out the details of a written agreement on October 4 and 5, 2010.  (Presseau ¶¶12, 13).  Defendants' counsel, after the purported formation of the oral agreement on October 5, 2010, characterized the agreement as "an agreement in principle." (Presseau ¶13; Exhibit C).  During the following weeks, Plaintiff proposed additional terms that were considered and either rejected or countered with a counter-proposal.  (Presseau ¶¶15, 16, 19; Exhibits E, F).  Defendants proposed several novel terms in the Draft including paragraphs 8, 10, 12, 13, 18 and 19 and additional details for terms previously discussed.  (Presseau ¶17; Exhibit G).

It is clear that the parties did not intend to be bound orally and only intended to be bound by a duly executed agreement in writing.  Even if Plaintiff's counsel had expressed on October 5,

2010, Plaintiff's acceptance without express reservation of the necessity of a writing, stated that

the payment structure on discussed was fine, consented to notifying Magistrate Judge Freeman

that an Agreement had been reached, neglected to contest Defendants' counsel's characterization

of settlement discussion in their letter, it does not outweigh the substance of the discussions,

correspondence, and course of conduct of the parties after October 5, and certainly does not

outweigh Defendants' own Draft of the proposed agreement.

### *Partial Performance*

Defendants claim that allocation of the anticipated settlement funds and reflecting the

settlement on its Form 10-Q filings constituted partial performance.  While Defendants may have

allocated funds in anticipation of settlement and even reported it on their 10-Q, these were not in

any way terms of any contemplated agreement.

Defendants claim that Defendants' counsel passing Plaintiff's request to investigate

employees that Plaintiff alleged discriminated against him was partial performance when that

request was conveyed to Defendants' in-house counsel.  Though Defendants' counsel did convey

the request to Defendants, they explicitly rejected any promise to take action.  Indeed, there is no

suggestion that Defendants even took any action in response to the request.

Defendants claim that the abandonment of discovery and trial preparation, including

neglect to pursue certain subpoenas, constitutes partial performance of the Agreement.

However, Defendants had themselves caused delay during discovery when they were unable to

access and produce documents responsive to Plaintiff's demands and when they requested that

Plaintiff's deposition be rescheduled from September 16 to October 6, 2010.  (Presseau ¶¶9, 11)

Moreover, one of the compelling factors that induced both parties to earnestly pursue settlement

was avoiding the anticipated cost of the pending depositions.  (Presseau ¶12).  It is not

convincing that the two-months delay in discovery that will likely result in light of this motion amounts to either partial performance or prejudice when Defendants themselves contributed to months of delay and were likely relieved, as were Plaintiff and his counsel, when the Plaintiff's deposition on October 6, 2010, was cancelled. (Presseau ¶11). Finally, following Plaintiff's acceptance of Defendants' offer in principle, it took Defendants' seventeen days to circulate the Draft. Plaintiff's counsel conveyed rejection of the offer on November 10, 2010, nineteen days after first receiving the Draft. Throughout the litigation, neither side can claim to have been particularly diligent, and certainly not defendants, so claiming disruption of discovery is partial performance is not compelling.

Defendants' consent to the extension of the thirty-day period to restore this matter to the Court's calendar did not constitute partial performance, either. Defendants did kindly consent to the extension and in a spirit of accommodation and good faith that had marked the entire course of the litigation. As of November 5, 2010, Plaintiff's counsel continued to diligently confer with Plaintiff to move forward with the proposed settlement. However, when Plaintiff's resolve not to accept the settlement had hardened, Plaintiff's counsel immediately notified Defendants counsel of the decision in order to avoid further delay to further pretrial procedures. (Presseau ¶21).

### Terms remaining to be negotiated

As noted above, the parties implicitly understood that certain terms remained to be negotiated and would in fact be taken up once an initial draft agreement had been circulated. (Presseau ¶¶12, 13) Defendants continued to entertain Plaintiff's requests regarding the structure of payments and other substantive terms after October 5, 2010, although most were rejected and one was countered. (Presseau ¶¶15, 16 and 19; Exhibits E and F). Moreover, Defendants proposed novel terms in the Draft as well as new details of terms previously discussed which

required Plaintiff's review. (Presseau ¶17; Exibit G). Defendants position that all substantive

terms had been agreed to between the parties is belied by their own Draft which included details

on previously discussed terms that were never mentioned yet bore significant substantive

implications were Plaintiff to accept them.

### *Type of Agreement that is Usually Reduced to Writing*

The Second Circuit in Ciaramella approvingly cited to New York law that requires

settlement of claims to be in writing, or, at a minimum, on the record in open court. Ciaramella,

31 F.3d at 326. *See* N.Y.C.P.L.R. §2104. *See also* Winston, 777 F.2d at 83 ("Where, as here, the

parties are adversaries and the purpose of the agreement is to forestall litigation, prudence

strongly suggests that their agreement be written in order to make it readily enforceable, and to

avoid still further litigation.")

The purported agreement in question is the settlement of an employment discrimination

action. As such it would follow that it ought to be in writing. In the least, it ought to be on the

record in open Court. Defendants rely on Kaczmarczyk v. Acme Contracting LLC, 2009 WL

3739442 (E.D.N.Y. 2009) and Hostcentric Technologies, Inc. v. Thunderbolt, LLC, No. 4 Civ.

1621 (KMW), 2005 WL 1377853 (S.D.N.Y. 2005) to argue that a writing is not required in this

case. In Kaczmarczyk, the assertion that a writing was required were not raised until months

after the settlement was reported to the Court. (Exhibit G). In Hostecentric, there had at least

been written communications between the parties. The parties had exchanged emails, and

though agreements were not finalized in a duly executed agreement, this did not preclude a

finding that the parties intended to be bound by those exchanges. In this case, the parties

discussed the necessity of finalizing a writing on October 4, 2010, and in the days following.

Defendants' own Draft iterated the necessity of a writing on October 24, 2010.

<u>Conditions of Restoration to the Calendar.</u>

Plaintiff does not object to a strict pretrial schedule, but the conditions Defendant requests are unreasonable given their contradiction that Plaintiff's deposition be ordered forthwith but that the fact discovery deadline not be extended beyond November 24, 2010.  Moreover, Defendant has been responsible for its fair share of delay in discovery, and therefore the Court should keep this in mind in considering their request.

As for Defendants' demand for attorney fees and costs, Defendants cite no authority to award such relief, do not allege bad faith, vexation, wonton or oppressive reasons.  The fact is both sides sought to finalize the written agreement in good faith until Plaintiff resolved that he could not accept the proposed settlement agreement.  *See* <u>Hostcentric Technologies, Inc.,</u> 2005 WL 1377853 at 3-4.

CONCLUSION

For the foregoing reasons, Defendants motion should be denied, the court should order a new pretrial schedule that will reasonably allow the completion of fact discovery, and deny Defendants' request for attorney fees and costs.


Dated: New York, New York

     October 1, 2010


     OGIHARA & ASSOCIATES, PLLC

     By:_____
        Matthew Presseau
     <u>Attorney for Plaintiff</u>
     122 East 42nd Street, Suite 2515
     New York, New York 10168
     Tel. (212) 661-1010
     Fax. (212) 661-6116