UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
DIEUDONNE ABEL,                         :
                                        :     09 Civ. 10388 (DLC)
                  Plaintiff,            :
                                        :     OPINION AND ORDER
        -v-                             :
                                        :
TOWN SPORTS INTERNATIONAL HOLDINGS,     :
INC. and TOWN SPORTS INTERNATIONAL,     :
LLC.,                                   :
                  Defendants.           :
                                        :
----------------------------------------X

Appearances:
For the plaintiff:
Matthew Presseau
Ogihara & Associates, PLLC
122 East 42nd St. Suite 2515
New York, NY 10168

For the defendants:
Zachary A. Hummel
Christopher R. Strianese
Bryan Cave LLP
1290 Avenue of the Americas
New York, NY 10104

DENISE COTE, District Judge:

        The defendants, Town Sports International Holdings, Inc.

and Town Sports International, LLC ("Town Sports"), have moved

to enforce an oral settlement agreement with the plaintiff,

Dieudonne Abel ("Abel"), or in the alternative, to allow only

the plaintiff's deposition and no further discovery.  For the

following reasons, the motion to enforce the settlement is

denied.

BACKGROUND

The plaintiff commenced this action on December 22, 2009, seeking injunctive relief and damages for violations of 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"); the New York City and New York State human rights laws; and New York common law.  The plaintiff alleged that the defendants defamed him and subjected him to unlawful employment discrimination on the basis of his race, color, and national origin.  At the initial pretrial conference on March 5, 2010, the parties were directed to contact Magistrate Judge Freeman by July 16 to pursue settlement talks.[1]  Fact discovery was scheduled to close on November 24.

On August 23 and September 3, the parties participated in settlement conferences by telephone with Magistrate Judge Freeman.  After the parties discussed their positions further, they contacted Magistrate Judge Freeman on September 9 to schedule an in-person conference.  On October 4, the parties met with Judge Freeman for a four-hour settlement negotiation.  The defendants made an offer of $75,000, which was more than double their initial offer.  In return, the defendants were to receive a dismissal of the action with prejudice, a general release of all claims, and confidentiality of the terms of the settlement.

---

[1] The parties did not contact Magistrate Judge Freeman until August 17.

Plaintiff asked that the offer be kept open for twenty-four hours, and the defendants agreed.  The plaintiff's attorney said that if his client agreed to the settlement offer, a writing "finalizing the agreement and likely including further terms would have to be worked out."  Magistrate Judge Freeman asked the parties if they wanted to put the settlement on the record, but in light of the request to keep the settlement offer open for twenty-four hours, the parties declined.

On October 5, plaintiff's counsel called defense counsel and accepted the offer.  During the telephone call, the parties agreed to the following details:  that the settlement amount of $75,000 would be broken into thirds: $25,000 for back-pay damages to be paid to the plaintiff via a Form W-2; $25,000 for emotional distress damages to be paid to the plaintiff pursuant to a Form 1099; and $25,000 for plaintiff's attorney pursuant to a Form 1099 to plaintiff's law firm.  The parties also agreed that the defendants would draft the settlement agreement.  At the end of the telephone call, the attorneys expressed their happiness that their clients were able to reach a deal.  Defense counsel followed up with an email that stated:  "I assume you are okay with our informing Judge Freeman that we have reached an agreement in principle as she requested we do yesterday?" to which the plaintiff's counsel replied: "Yes please feel free."

As a result of the October 5 telephone call, the defendants cancelled the plaintiff's deposition, which had been scheduled for October 6.  By letter dated October 7, the defendants informed Magistrate Judge Freeman:  "We are pleased to report that the parties have now reached a settlement agreement in principle. . . .  The parties wish to thank the Court for its diligent efforts in helping the parties reach a mutually agreeable resolution to this case."  On October 8, Magistrate Judge Freeman informed the Court that "the parties reached an agreement."  On October 9, the Court issued an Order discontinuing the case without prejudice to restoring it to the Court's calendar within thirty days.  Thirty days from October 9 was November 8.

During the week of October 11, the plaintiff made a number of requests for terms to be included in the settlement agreement.  First, the plaintiff asked that the defendants ask Town Sports's general counsel to investigate the alleged conduct of the Town Sports employees that the plaintiff accused of wrongdoing.  The defendants stated that because that condition was not a part of the deal, they would not be willing to include that term in the settlement agreement, but that they would make the request.  On October 18, defense counsel made the request to Town Sports's general counsel and informed the plaintiff that he had done so.  Second, the plaintiff requested that, for tax

reasons, the settlement payment be identified as compensation for physical sickness.  On October 20, the defendants refused to make the identification.  Finally, on October 20, the plaintiff asked about "having his name cleared in TSI's records."  Defense counsel agreed to ask his clients about clearing Abel's name in Town Sports' records, but advised that he did not think they were likely to agree.  Instead, he offered to include a term in the settlement agreement that the defendants would provide a neutral employment reference for the plaintiff.

Plaintiff's counsel received the draft settlement agreement for the first time on October 22.  He states that several provisions included "new terms" and that several agreed-upon terms had been fleshed out in greater detail.  The terms of the draft agreement are more or less as described above: $75,000 split into three parts -- $25,000, less taxes, as lost compensation on a Form W-2 to the plaintiff; $25,000, less taxes, for emotional distress pursuant to a Form 1099 to plaintiff; and $25,000 by check to plaintiff's law firm conditioned on receipt of a fully executed Form W-9.  In exchange, the draft agreement contains a "complete release and waiver" of all of the plaintiff's existing and potential claims against Town Sports and a waiver of any claim under the Family and Medical Leave Act ("FMLA").  The draft also contains an agreement by the plaintiff to cooperate with Town Sports in any

future litigation relating to the period of his employment, and
a confidentiality provision.

On or about October 26, plaintiff's counsel wrote to
defense counsel asking whether the defendants would be willing
to break the payments up between 2010 and 2011, suggesting
"first payment whenever practicable and second on or as soon
after Jan[.] 1, 2011?"  The timing of the payments had not been
previously discussed.  Approximately two days later, the
defendants agreed to this timing.

In the month of October, Town Sports reserved $75,000 to
pay the plaintiff pursuant to the settlement agreement.  Town
Sports included this $75,000 reserve in the total expense column
of its publicly available financial statements included in its
quarterly report in a Form 10-Q filed with the Securities and
Exchange Commission for the period ending September 30, 2010.

On November 5, plaintiff's counsel informed defense counsel
that the plaintiff needed additional time to review the written
settlement agreement with his attorney and accountant, and the
defendants agreed to an extension of the thirty-day period in
the October 9 Order for an additional thirty days.  By letter
dated November 5, plaintiff's counsel wrote to the Court and
requested the extension due to "continuing issues delaying
finalization of the contemplated settlement," specifically "the
structuring of the settlement affecting the taxation of the

settlement."  By memo endorsed Order of November 8, the
extension was granted.

On November 10, the plaintiff's attorney advised defense
counsel that the plaintiff did not want to go forward with
settlement and wanted to have a trial.  Plaintiff's attorney
told the defendants' attorney some of the terms and conditions
to which the plaintiff objected and advised him that Abel
"believed he was generally not getting the deal he wanted under
the then terms and conditions of the draft agreement."  By
letter dated November 15, the plaintiff informed the Court that
the plaintiff "no longer wishes to settle this action" and asked
that the case be restored to the Court's calendar.  The
defendants filed a motion to enforce the settlement agreement on
November 24, 2010.  The motion was fully submitted on December
17.

In their motion, the defendants seek to enforce the
following terms and conditions: a $75,000 payment, broken in to
three parts as described above, with the payment to the
plaintiff being made in two parts -- the first as soon as
practicable, the second payable on January 1 or as soon as
practicable thereafter -- a general release of all claims, and
confidentiality of the terms of the settlement.

The plaintiff has submitted an affidavit in opposition to
the defendants' motion.  In it, he states that after he left the

settlement conference on October 4, he told his lawyer that he
was "OK with the offer," but that he understood that "it would
not be finished until I signed the agreement."  The plaintiff
states that when he reviewed the draft agreement, portions of it
made him very upset, including a provision that he interpreted
as saying that the defendants "didn't need to settle this case
but that they were just giving me money to go away."  He also
objected to the provision that stated that the plaintiff would
not seek employment with Town Sports in the future, and the
provision requiring the plaintiff's cooperation in future
litigation.  In light of the provisions with which he disagreed
and his disappointment that Town Sports would not include his
requests in the agreement, Abel decided he did not want to
settle.

                         DISCUSSION

     Where the parties to an oral settlement agreement do not
intend to be bound by the agreement until it is reduced to
writing and signed, their oral agreement is unenforceable.  "The
intention of the parties on this issue is a question of fact, to
be determined by examination of the totality of the
circumstances."  Ciaramella v. Reader's Digest Ass'n, Inc., 131
F.3d 320, 322 (2d Cir. 1997).  "When a party makes a deliberate,
strategic choice to settle, a court cannot relieve him of that
choice simply because his assessment of the consequences was

incorrect." Powell v. Omnicom BBDO/PHD, 497 F.3d 124, 128 (2d
Cir. 2007).  On the other hand, "[p]arties who do not intend to
be bound until the agreement is reduced to a signed writing are
not bound until that time." Id. at 129.  Four factors guide the
inquiry whether the parties intended to be bound in the absence
of a writing:

> (1) whether there has been an express
> reservation of the right not to be bound in
> the absence of a writing; (2) whether there
> has been partial performance of the
> contract; (3) whether all of the terms of
> the alleged contract have been agreed upon;
> and (4) whether the agreement at issue is
> the type of contract that is usually
> committed to writing.

Id.  No single factor is determinative.  Id.  An examination of
these factors leads to the conclusion that the plaintiff did not
intend to be bound until the settlement agreement was reduced to
writing.

A. Express Reservation Not to Be Bound

"[I]f either party communicates an intent not to be bound
until he achieves a fully executed document, no amount of
negotiation or oral agreement to specific terms will result in
the formation of a binding contract." Winston v. Mediafare
Enter. Corp., 777 F.2d 78, 80 (2d Cir. 1985).  In this case, the
plaintiff discussed the need for a written agreement at the
October 4 settlement conference, and thereafter, requested that
additional terms be added to the written agreement.  The draft

agreement itself also contains a provision that states that the agreement will not be effective or enforceable until the plaintiff has delivered a signed, notarized copy of the agreement to the defendants.  Taken as a whole, these expressions reflect a reservation of a right not to be bound in the absence of a writing.

The defendants make principally two arguments to support a finding that there was no express reservation.  First, they argue that the plaintiff did not communicate any express reservation not to be bound through his words or actions.  The defendants argue that by requesting that the defendants keep the offer open for 24 hours, the plaintiff intended to give them a binding answer at the end of the 24 hours, rather than at a later point that a written agreement could be finalized.  They also argue that the plaintiff's failure to object when the defendants notified the court that they had reached an agreement in principle demonstrates that there was no reservation not to be bound.  Second, the defendants argue that even if the agreement itself contains the requirement that the plaintiff must sign the agreement for it to be effective, they are seeking to enforce only the terms to which the parties agreed on October 5.  They argue that the plaintiff's request to add new terms or to negotiate the terms of the draft agreement are wholly

irrelevant to whether the plaintiff intended to be bound by the October 5 agreement in principle.

On balance, the facts described above weigh against enforcing the settlement agreement. Although the plaintiff did orally accept an agreement in principle on October 5, the plaintiff's discussion of the need for a formal settlement agreement on October 4 and the parties' subsequent negotiations regarding terms of the agreement, approach an express reservation of the right not to be bound until a written settlement agreement was executed.

B. Partial Performance

The defendants have shown that they have partially performed the oral agreement. Town Sports allocated $75,000 toward the payment of Abel's claim. It also abandoned discovery and trial preparation by, among other things, cancelling the plaintiff's deposition.

While this factor favors the defendants, it does so only slightly. It is undisputed that Town Sports did not actually make any payments to Abel. The defendants have not shown that reserving $75,000 for the settlement caused it to forego any opportunities or had any material impact on its financial statements. The impact of the oral settlement agreement on the course of discovery in this litigation will be addressed in a separate Order.

C. Agreement On All Terms

The parties did not agree to all of the terms of their settlement during the negotiations before the magistrate judge on October 4 or in the telephone call on October 5 in which they agreed to a settlement in principle.  "[E]ven 'minor' or 'technical' changes arising from negotiations over the written language of an agreement can weigh against a conclusion that the parties intended to be bound absent a formal writing."  Powell, 497 F.3d at 130 (citation omitted).  Continued negotiations over the performance of the settlement, rather than its terms, however, will not weigh against enforceability.  Id.

The plaintiff proposed adding three provisions to the agreement:  that the payments would be described as compensation for physical injuries to allow the plaintiff the tax treatment he preferred; that his name would be cleared in Town Sports's records; and that the defendants would agree to investigate the employees that Abel alleged harassed and discriminated against him.  The defendants also added terms to the draft agreement beyond those discussed on October 4 and 5, for example, whether the plaintiff explicitly waived any FMLA claims or would agree to cooperate with Town Sports in any future litigation.  These negotiations concerned both the terms of the settlement and its performance.  As a result, this factor weighs against enforcement of the agreement, but only marginally.

12

D. Agreement Usually Committed to Writing

Finally, a settlement of an employment discrimination claim
is customarily reduced to writing, particularly when the terms
of the settlement have not been announced on the record in open
court.  See id. at 130 (employment discrimination claims).  In
Powell, the Second Circuit observed that a settlement "for
$62,500 paid over several years strongly suggested that the
parties would intend to be bound only by a writing."  Id.
(citation omitted).  Here the settlement was for the payment of
$75,000.  Additionally, a settlement "containing perpetual
rights" like those here, including "how future requests for
employee references would be handled, prohibiting the plaintiff
from reapplying for employment with the defendant, and imposing
confidentiality requirements" are normally put in writing when
not placed on the record in open court.  Id. at 130-31.

The defendants cite two post-Powell cases in support of
their argument that no writing is required.  Both are
distinguishable.  In Kaczmarczyk v. Acme Contracting LLC, No. 06
Civ. 1005(CBA), 2009 WL 3739442, at *7 (E.D.N.Y. Nov. 3, 2009),
the court's minute entries from several conferences with the
parties, which reflected the terms of the agreement and the
parties' assent to the terms, constituted a contemporaneous
documentation of the terms in "formal court records."  Id.  No
such writing exists here.  In the other case on which defendants

13

rely, <u>Lee v. Hosp. for Special Surgery</u>, No. 09 Civ. 1117(LAK), 2009 WL 2447700, at *3 (S.D.N.Y. Aug. 11, 2009), the district court did not discuss <u>Powell</u> or apply its four-part test.  In any event, the parties in <u>Lee</u> reached an agreement in a mediation session and expressly agreed in front of the mediator that all the terms agreed upon were "binding and enforceable."

In sum, three of the <u>Powell</u> factors weigh against enforcing the settlement.  In the absence of an agreement to the principal terms of settlement on the record before the magistrate judge, the defendants have not shown that the parties' oral agreement of October 5 to settle this litigation is enforceable.

CONCLUSION

The defendants' November 24 motion to enforce the settlement agreement is denied.  An Order establishing a schedule for the remainder of the pretrial proceedings shall issue separately.

Dated:    New York, New York
          December 23, 2010

                                          _____
                                          DENISE COTE
                         United States District Judge

14